UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

VICENTE YANES ALVARADO,

          Petitioner,

      v.

Case No. 2:26-cv-971-KCD-NPM

KEVIN GUTHRIE, CARLOS R.
NUNEZ, GARRET J. RIPA,
ACTING DIRECTOR-ICE TODD
LYONS, MARKWAYNE MULLIN,
PAMELA BONDI,  EXECUTIVE
OFFICE FOR IMMIGRATION
REVIEW,

          Respondents.

                              /

## ORDER

Petitioner Vicente Yanes Alvarado has filed a habeas corpus petition challenging his detention by U.S. Immigration & Customs Enforcement ("ICE"). (Doc. 1.)[1] He claims that the Attorney General is holding him without a bond hearing in violation of the Immigration and Nationality Act ("INA"), and his continued imprisonment violates the Fifth Amendment as interpreted by *Zadvydas v. Davis*, 533 U.S. 678 (2001). (*Id.* at 21-25.) Respondents oppose the petition. (Doc. 9.)

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

## I. Background

Alvarado is a El Salvadorean citizen who arrived at the U.S. border in January 2024, was apprehended, and then released. (Doc. 1 at 11; Doc. 1-2; Doc. 1-3.) But that reprieve ended on March 26, 2026, when Alvarado was detained by ICE again. He has remained in federal detention ever since, waiting on a final order of removal.

## II. Legal Framework

The federal habeas statute, 28 U.S.C. § 2241, provides authority to issue writs of habeas corpus when an individual is "[i]n custody in violation of the Constitution or law or treaties of the United States." *Id.* § 2241(c)(3). "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). "Section 2241 authorizes federal courts to hear challenges to immigration detention." *Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *2 (S.D. Fla. Sept. 9, 2025).

## III. Discussion

Alvarado's habeas petition presses three substantive claims. First, his detention violates the INA because he is eligible for a bond hearing that the Government is withholding. (Doc. 1 at 12.) Second, his continued detention without a bond hearing violates the Fifth Amendment. (*Id.* at 14.) Finally,

2

the Government's "categorical denial of bail to certain noncitizens violates the right to bail encompassed by the Eighth Amendment." (*Id.* at 14-15.)

## A. INA (Counts I and II)

Sections 1225 and 1226 of the INA govern the detention of noncitizens before a final order of removal. The former provision covers "inadmissible arriving aliens" who are "present in the United States [but have] not been admitted." 8 U.S.C. § 1225(a)(1). So-called "'applicants for admission' in the language of the statute." *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018). Pertinent here, § 1225 "mandate[s] detention of applicants for admission until certain proceedings have concluded." *Id.* The only exception is release "on parole for urgent humanitarian reasons or significant public benefit." *Id.* at 288. So aliens falling under § 1225 are categorically not entitled to a bond hearing.

On the other hand, § 1226 has historically "authorize[d] the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings[.]" *Jennings*, 583 U.S. at 289 (emphasis added). Section 1226(a) sets out a discretionary detention framework for aliens arrested and detained "[o]n a warrant issued by the Attorney General." 8 U.S.C. § 1226(a). While the arresting immigration officer makes an initial custody determination, noncitizens detained under § 1226(a) may appeal that decision in a bond hearing before an immigration judge. *See* 8 C.F.R. §§

3

1236.1(c)(8), (d)(1). "Federal regulations provide that aliens detained under §
1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S.
at 306.

According to Alvarado, he is entitled to a bond hearing, and § 1226 is
the vehicle through which he would obtain such relief. (Doc. 1 at 14.) But this
argument runs headlong into the facts. Alvarado was apprehended at the
border. That puts him squarely under § 1225. *See, e.g.*, *Lopez v. Hardin*, No.
2:25-CV-830-KCD-NPM, 2025 WL 3022245, at *4 (M.D. Fla. Oct. 29, 2025)
("[Section] 1225 applies to noncitizens arriving at a border or port and are
presently seeking admission into the United States.").

An alien "who arrives in the United States (whether or not at a
designated port of entry[)] shall be deemed . . . an applicant for admission." 8
U.S.C. § 1225(a)(1). Alvarado concededly meets this definition. He was
stopped at the border, had no legal status, and sought entry. *See Jennings*,
583 U.S. at 287 ("[A]n alien who arrives in the United States . . . but has not
been admitted, is treated as an applicant for admission.").

Applicants for admission who are inadmissible must be detained
pending removal proceedings. *Id.* at 297. The Government has only one
alternative under this framework—it can temporarily release the noncitizen
on humanitarian parole. *Id.* at 288. But make no mistake, this is not a lawful
entry. A paroled noncitizen has not been admitted to the country. Instead,

the law treats them as if they never crossed the threshold. When the parole ends, they return to custody and are treated "in the same manner as that of any other applicant for admission." *Id.* (quoting 8 U.S.C. § 1182(d)(5)(A)). So, while Alvarado may have physically spent time in the interior of the United States after his release, the law places him exactly where he started—at the border, subject to § 1225. *See Campbell v. Almodovar*, No. 1:25-CV-09509 (JLR), 2025 WL 3538351, at *6 (S.D.N.Y. Dec. 10, 2025). "[A]lthough aliens seeking admission into the United States may physically be allowed within its borders pending a determination of admissibility, such aliens are legally considered to be detained at the border and hence as never having effected entry into this country." *Moore v. Nielsen*, No. 4:18-cv-01722-LSC-HNJ, 2019 WL 2152582, at *3 (N.D. Ala. May 3, 2019); *see also Singh v. Noem*, No. CIV 25-1110 JB/KK, 2026 WL 146005, at *36 (D.N.M. Jan. 20, 2026).

Alvarado—who has never been admitted and was found by an "examining immigration officer" to be "not clearly and beyond a doubt entitled to be admitted" 8 U.S.C. § 1225(b)(2)(A)—is properly in custody under §1225(b)(2). Section 1225 says nothing "whatsoever about bond hearings." *Jennings*, 583 U.S. at 297. So Alvarado's continued detention without a bond hearing cannot be in violation of the INA.

**B. Due Process (Count IIII)**

Even if Alvarado's detention without a bond hearing is authorized by the INA, he argues it violates the Fifth Amendment as interpreted by *Zadvydas v. Davis*, 533 U.S. 678 (2001). (Doc. 1 at 32-36.) Not so. As this Court has already explained in detail, such a claim is not available for aliens stopped at the border under § 1225. *See Lezcano v. Ripa*, No. 2:26-cv-766-KCD-DNF, 2026 WL 1004523, at *2-5 (M.D. Fla. Apr. 14, 2026). The reasoning from *Lezcano* is equally applicable here. *Id.*

One can certainly understand Alvarado's frustration with his current position, waiting in a detention cell for months while his immigration case inches forward. Yet this Court cannot use judicial fiat to conjure a due process claim just to ease the wait. We are not staring down the barrel of indefinite detention—the constitutional danger the Supreme Court found so problematic in *Zadvydas*. Alvarado's current custody has a clear statutory endpoint: it lasts only "until removal proceedings have concluded." *Jennings*, 583 U.S. at 299. And if he eventually receives a final order of removal only to have his deportation stall, the doors of the courthouse will open for him to seek relief under *Zadvydas*. Because the existing framework comes with a built-in expiration date, there is no reason to engineer a constitutional workaround.

## C. Eighth Amendment (Count IV)

We need not spend long here. "[T]here is . . . no Eighth Amendment violation because [Alvarado] was detained pursuant to federal law and there is no evidence that the government has actively tortured him." *Mokanu v. Warden Miami Fed. Det. Ctr.*, No. 1:25-CV-24121-EA, 2026 WL 472294, at *6 (S.D. Fla. Feb. 19, 2026). And in any event, because Alvarado "is a civil detainee, the Eighth Amendment does not apply to him." *Rashid v. Trump*, 807 F. Supp. 3d 349, 358 (D. Vt. 2025); *cf. Carlson v. Landon*, 342 U.S. 524, 546 (1952) (holding, in an immigration case, that the Eighth Amendment's Excessive Bail Clause does not require that bail be available, only that, when it is, bail is not excessive).

## IV. Conclusion

Alvarado is legally situated at the border and subject to mandatory detention under 8 U.S.C. § 1225.[2] Because that statute provides no right to a bond hearing, and the Due Process Clause does not step in to supply one for an arriving alien, his continued custody is lawful. Accordingly, Alvarado's

---

[2] Alvarado also seeks relief under a California case that certified a class action of aliens who are in immigration detention and being denied access to a bond hearing. *See Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025). *Bautista* has no application here because Alvarado falls outside the proposed class since he was "apprehended upon arrival." *Id.* at *9. In addition, the Court does not find *Bautista* binding. *See, e.g., Sanchez-Moralez v. Field Off. Dir., Miami Field Off., U.S. Immigr. & Customs Enf't*, No. 26-CV-20217-JB, 2026 WL 496726, at *2 (S.D. Fla. Feb. 23, 2026).

Petition for a Writ of Habeas Corpus (Doc. 1) is **DENIED**. The Clerk is directed to terminate any pending motions and close the case.

ORDERED in Fort Myers, Florida on April 29, 2026.

Kyle C. Dudek
United States District Judge